IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

LEMONTREE ACADEMY, LLC,         *

    Plaintiff,              *

vs.                         *
                                  CASE NO. 3:20-CV-126 (CDL)
UTICA MUTUAL INSURANCE COMPANY  *
and REPUBLIC FRANKLIN INSURANCE
COMPANY,                  *

    Defendants.           *

O R D E R

    Lemontree Academy, LLC owns and operates a childcare facility in Morgan County, Georgia.  Defendants Utica Mutual Insurance Company and Republic Franklin Insurance Company issued insurance policies that cover certain losses associated with this facility. After Georgia Governor Brian Kemp issued an Executive Order declaring a public health emergency in Georgia due to the spread of COVID-19, Lemontree was forced to temporarily cease operations and lost significant business income.  Lemontree now seeks a declaratory judgment that the insurance policies cover the business income it lost due to the COVID-19 pandemic and subsequent shutdown orders.  Defendants filed a motion to dismiss, arguing that the policies do not provide coverage for the lost business income caused by COVID-19 and the shutdown orders.  For the

following reasons, Defendants' motion to dismiss (ECF No. 7) is granted.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556.  But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## FACTUAL ALLEGATIONS

Lemontree alleges the following facts.  For the purposes of Defendants' motion to dismiss, the Court accepts these facts as true.

Lemontree operates a childcare facility in Morgan County, Georgia.  Compl. ¶ 3, ECF No. 1-1.  This facility offers "day care

programs, summer camps, enrichment programs, and Pre-K programs."
*Id.* ¶ 6.   Because of the COVID-19 global pandemic, Governor Brian
Kemp issued an Executive Order on March 14, 2020 declaring a
statewide public health emergency in Georgia.   *Id.* ¶ 15; Defs.'
Mot. to Dismiss Ex. C, Executive Order (Mar. 14, 2020), ECF No. 7-
4 ("Executive Order").   Lemontree contends that this Executive
Order required "all non-essential businesses located within the
state" to cease all but minimum basic operations.   Compl. ¶ 15.
In response to this Executive Order and COVID-19 health concerns,
Lemontree shut down its operations, and as a result, suffered a
significant loss of business income.   *Id.* ¶ 17.

Lemontree is the named insured on insurance policies issued
by Defendants Utica Mutual Insurance Company and Republic Franklin
Insurance Company.[1]   *Id.* ¶ 7.   Coverage under the policies includes
losses to business income under certain circumstances.   *Id.* ¶ 8.
The policies state that the insurer will "pay for the actual loss
of Business Income [the policyholder] sustain[s] due to the
necessary 'suspension' of [the policyholder's] 'operations' during
the 'period of restoration.'"[2]   Defs.' Mot. to Dismiss Ex. A, 2019-

---

[1] Lemontree purchased a policy covering September 30, 2019 to September
30, 2020 from Defendant Republic Franklin.  Mem. in Supp. of Defs.' Mot.
to Dismiss 2-3, ECF No. 7-1.  Lemontree purchased a policy with the same
policy number from Defendant Utica that covered September 30, 2020 to
September 30, 2021.  *Id.*  Defendants claim that the two policies are
identical except for minor, insignificant differences, which Lemontree
does not contest.  *Id.*
[2] The Court may consider the policy documents without converting
Defendants' motion into a motion for summary judgment because the

2020 Policy A26, ECF No. 7-2; Defs.' Mot. to Dismiss Ex. B, 2020-2021 Policy B40, ECF No. 7-3.   Coverage for "business income" losses only exists if the suspension of business is "caused by direct physical loss of or damage to property at [the described] premises."   2019-2020 Policy A25, 2020-2021 Policy B40.

The policies also include a "Civil Authority" provision, which Lemontree alleges extends insurance coverage to "the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the scheduled premises is specifically prohibited by order of civil authority." Compl. ¶ 10.   Coverage under the Civil Authority provision of the policies only applies if access to the described premises is prohibited because of "direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss."[3]   2019-2020 Policy A26.

Defendants contend that these provisions do not cover the losses that Lemontree claims.   Furthermore, they argue that even if coverage did exist under one of these provisions, that coverage is excluded under the "Virus Exclusion" of the policies.   2019-

---

policies are central to Lemontree's complaint and no party questions their authenticity. *Basson v. Mortg. Elec. Registration Sys., Inc.*, 741 F. App'x 770, 771 (11th Cir. 2018) (per curiam).

[3] This language is taken from the Civil Authority provision in the 2019-2020 policy.   The Civil Authority provision in the 2020-2021 policy is worded differently, but it requires essentially the same thing – civil action prohibiting access to the insured property due to physical damage caused to another property.   2020-2021 Policy B41.

2020 Policy A38; 2020-2021 Policy B85.  This exclusion states that
the insurer "will not pay for loss or damage caused by or resulting
from any virus, bacterium or other microorganism that induces or
is capable of inducing physical distress, illness or disease."
*Id.*  This exclusion applies to "all coverage . . . including but
not limited to forms or endorsements that cover . . . business
income, extra expense or action of civil authority."  *Id.*

As explained in the following discussion, the plain language
of the Business Income and Civil Authority provisions of the
policies do not cover the losses Lemontree suffered under the
circumstances presented here.  Because this lack of coverage
defeats Lemontree's claims, it is unnecessary to decide whether
the Virus Exclusion also dooms those claims.[4]

DISCUSSION

I.  **Business Income Coverage**

The Business Income provision of the policies provides
coverage for the loss of business income sustained due to a
suspension of operations "caused by direct physical loss of or
damage to property at premises."  2019-2020 Policy A25, 2020-2021

---

[4] Defendants briefly argue that Lemontree is also not entitled to coverage
under the Extra Expense provision of the policies.  Under the policies,
the Extra Expense provision only applies if "the Declarations show that
Business Income coverage applies at that premises."  2019-2020 Policy
A25; 2020-2021 Policy B40.  Because the Court finds that Business Income
coverage does not apply under the circumstances Lemontree describes, it
is unnecessary to address the Extra Expense provision in any further
detail.

Policy B40.   Lemontree argues that COVID-19 made its facility
unsafe and uninhabitable analogous to fire or water damage.   But
Lemontree fails to allege facts that COVID-19 caused "direct
physical loss or damage" to the property.   There is no plausible
allegation that the COVID-19 virus seeped into any of the
structures and caused any physical damage to them, which then made
it unsafe to inhabit the facility.   In fact, there is no allegation
that COVID-19 was ever identified within the facility.   *See* Compl.
¶ 24 ("Plaintiffs do not seek any determination of whether the
Coronavirus is physically in the insured premises[.]").   The
contention is that the facility had to be closed so that people
could not congregate within the facility and spread COVID-19 from
person to person.

Under Georgia law, "physical loss or damage" means "an actual
change in insured property then in a satisfactory state, occasioned
by accident or other fortuitous event directly upon the property
causing it to become unsatisfactory for future use or requiring
that repairs be made." *AFLAC Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d
317, 319 (Ga. Ct. App. 2003).   Even if Lemontree could eventually
prove that COVID-19 was present in its facility, the mere presence
of the COVID-19 virus would not constitute the direct physical
damage necessary to trigger coverage.   Lemontree does not plausibly
allege that COVID-19 would, by itself, physically damage or alter
any part of its facility.   In its response brief, Lemontree notes

6

that COVID-19 can spread by close contact, airborne transmission, or contact with contaminated surfaces.  Lemontree contends that its childcare facility became "uninhabitable" because it was no longer safe for individuals to gather and closely interact with one another.  Pl.'s Resp. to Defs.' Mot. to Dismiss 6, ECF No. 16. As noted by another judge in this Circuit, this "omnipresent specter" of COVID-19 exposure is a threat experienced by "every home, office, or business that welcomes individuals into an indoor setting across the globe" and is insufficient to trigger business income coverage under the terms of the policies.  *Johnson v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-cv-02000-SDG, 2021 WL 37573, at *5 (N.D. Ga. Jan, 4, 2021).  At best, Lemontree maintains that the possible exposure of its facility to the virus caused physical damage for purposes of the policy.  But that is not what the policy says.  The policy plainly and unambiguously requires physical damage to the property.  And there was none here.

To the extent that Lemontree contends that the Governor's shutdown orders caused physical damage to the property, that argument is likewise unpersuasive.  The Executive Order did not physically affect Lemontree's facility in any manner.  It may have prevented Lemontree from using it, but that is not physical damage as contemplated by the policy.  And as explained in the next section of this Order, the shutdown also does not implicate the "Civil Authority" provisions of the polices.

## II.   The Civil Authority Provision

Under the Civil Authority provision of the policies, lost business income is a covered loss if the civil authority prohibits access to the described premises because of damage caused to property other than property at the described premises.  While the Governor's shutdown orders may have prevented the use of the Lemontree facility, it did so because of the risk of spreading COVID-19, not because of damage to the Lemontree property and certainly not because of damage to property other than the insured facility.  There is no allegation that any "other" property was affected in any way by the shutdown orders.  Accordingly, no coverage exists here under the plain and unambiguous language of the Civil Authority provision in the policies.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 7) is granted.[5]

IT IS SO ORDERED, this 11th day of March, 2021.

S/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE

---

[5] The Court notes that its decision today is in line with dozens of district court decisions across the country, including several in Georgia, dismissing nearly identical claims for insurance coverage due to COVID-19 related business income losses. *See, e.g., Johnson*, 2021 WL 37573, at *1 (holding that an insurance policy's business income and civil authority provisions did not cover COVID-19 related income losses); *Karmel Davis & Assocs, Attorneys-At-Law, LLC v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-cv-02181-WMR, 2021 WL 420372, at *4 (N.D. Ga. Jan. 26, 2021) (same); *Henry's La. Grill, Inc. v. Allied Ins. Co.*, No. 1:20-CV-2939-TWT, 2020 WL 5938755, at *1 (N.D. Ga. Oct. 6, 2020) (same).